# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLAND THOMAS WALTERS,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:14-cv-00827-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 22) |

## I.

## INTRODUCTION

Plaintiff Harland Thomas Walters ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from arthritis, cervical degenerative disc disease, lumbar degenerative disc disease, seizure disorder; and somatoform disorder.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 10, 11.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on November 2, 2010. (AR 169.) Plaintiff's applications were initially denied on March 18, 2011, and denied upon reconsideration on August 11, 2011. (AR 106-108, 109-112, 116-120.) Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ"). Plaintiff appeared for a hearing on July 19, 2012. (AR 32-82.) On August 17, 2012, the ALJ found that Plaintiff was not disabled. (AR 8-25.) The Appeals Council denied Plaintiff's request for review on April 3, 2014. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff appeared at the hearing with counsel and testified. (AR 37-58, 67-77.) Plaintiff was born on October 2, 1972. (AR 37.) He is divorced and has full custody of his eight year old son. (AR 37-38.) Plaintiff recently moved in with his mother to make sure that his son was cared for during the time that he had spells. (AR 38.) Plaintiff has a driver's license and drives once a week. (AR 39.)

Plaintiff was in special education classes during high school because of dyslexia with severe encroachment into his short term memory. (AR 39.) Plaintiff has an associate degree in public relations. (AR 39.) He received accommodations in college, such as note takers, recording the class, and copies of the professor's notes. (AR 39-40.) Plaintiff can barely read and write. (AR 40.) Plaintiff settled a workmen's compensation claim for a lump sum and no vocational rehabilitation was offered. (AR 41.)

Plaintiff is unable to work due to seizures, and because of his headaches, and his back, knee, wrist, and elbow do not feel good. (AR 44.) Plaintiff has some fatigue and nausea. (AR 44.) Plaintiff is off balance a lot of times. (AR 45.) Plaintiff goes to the doctor ten or more times per month. (AR 45.) Plaintiff has to lay down when he gets dizzy and not push himself because he can throw his blood pressure into stroke status even though he does not suffer from high blood pressure. (AR 46.) Early on some of the doctors told Plaintiff that he was having

strokes and he takes medication to keep his blood pressure from spiking.  (AR 46.)  When Plaintiff has a seizure it would look to someone else as if he was having chills on the right side.  (AR 74.)  Plaintiff sometimes loses the ability to speak for thirty seconds to two minutes.  (AR 74.)  Plaintiff sometimes smells gasoline or sees bright lights before having a seizure.  (AR 74-75.)

Plaintiff takes morphine, Oxycontin, Robaxin and another anti-inflammatory medication.  (AR 47.)  Plaintiff's medication controls 30 to 40 percent of his pain.  (AR 47.)  Plaintiff has received epidurals for back pain that relieve about 20 percent of his pain.  (AR 49.)  Plaintiff did not have physical therapy because they were afraid it might aggravate his condition.  (AR 49.)  Medication controls and lessens about 50 percent of his seizures.  (AR 47-48.)

Plaintiff is not currently seeing anyone for psychological issues and the doctors do not prescribe any psychiatric medication because it might heighten his seizure problem.  (AR 51.)  Plaintiff has daily pain that he rates as six out of ten.  (AR 52.)  Plaintiff's pain is in his back and then when it is not hurting, the pain moves to his head.  (AR 52.)  Plaintiff has aching, burning, tingling pain that occasionally sends spasms down his right leg and up his right arm.  (AR 53.)  When that happens they go numb and Plaintiff has twinges so he cannot feel or touch them.  (AR 53.)  Plaintiff has pain in his legs a couple times a day and goes to the emergency room two to three times a week.  (AR 73.)  Plaintiff has tremors on occasion.  (AR 76.)  Most of the time, Plaintiff has some degree of tremors.  (AR 76.)  Plaintiff has seven or eight headaches a week that last from two to six hours.  (AR 76.)  The headaches occur at the spot where Plaintiff hit his head when his car rolled over in 2007.  (AR 76.)

Plaintiff spends most of his day in bed unless he has to go somewhere.  (AR 48.)  Plaintiff was falling down too much so a doctor prescribed a cane.  (AR 50.)  Plaintiff does not use the cane at home; he only needs it when he is in wide open spaces.  (AR 50.)  Plaintiff has chronic vertigo and falls three to four times a week.  (AR 72.)  Plaintiff has seizures at least four times a week during the daytime.  (AR 53.)  Plaintiff has six seizures a week during the daytime and additional seizures at night that are more severe.  (AR 75.)  He has seizures predominately at night and in his sleep that are the strongest.  (AR 53.)  Plaintiff will wake up with a bruise and

1  know that he had a seizure. (AR 75.) On a bad week, Plaintiff will have ten to twelve seizures.
2  (AR 54.) After a seizure, Plaintiff is so tired that he goes to bed for two to three days. (AR 54.)

3  Plaintiff can sit for ten to twenty minutes; stand for twenty to thirty minutes with or
4  without his cane; and can walk for half a block. (AR 54-55.) Plaintiff does not lift anything
5  heavier than a gallon of milk. (AR 55.) Plaintiff has difficulty using both his hands, but
6  particularly the right. (AR 55.) Plaintiff cannot tie his shoes and can only use a pencil for a
7  short period of time before his hands start to ache. (AR 55-56.) Plaintiff cannot use a computer
8  keyboard for very long. (AR 56.) Plaintiff might lock up if he bends over to pick something up.
9  (AR 56.) Plaintiff has a very hard time with concentration and memory. (AR 56.) He has
10 limited short term memory. (AR 56.) Plaintiff uses reminders to make sure he takes his
11 medications. (AR 57.) Plaintiff zones out and gets confused when following simple
12 instructions. (AR 57.) Sometimes Plaintiff is able to microwave meals. (AR 57.) Plaintiff is
13 indecisive and does not want to be around other people. (AR 57-58.) Plaintiff probably has
14 mood swings and panic attacks. (AR 58.)

15 On a typical school day, Plaintiff gets his son up and makes sure he gets ready for school.
16 (AR 69.) He goes back to bed and when it is time for his son to go to school he gets up again.
17 (AR 69.) Plaintiff goes outside and watches his son go across the street to the school. (AR 69.)
18 That is all Plaintiff does unless he has a doctor appoint or some other reason to leave the house.
19 (AR 69.) Plaintiff lies down until his son gets home from school. (AR 70.) Plaintiff spends
20 sixty to seventy percent of his day in bed. (AR 72.)

21 Plaintiff can do his own self-care such as bathing and dressing. (AR 70.) Plaintiff does
22 the grocery shopping with his son. (AR 70.) Plaintiff occasionally will cook or load the
23 dishwasher. (AR 71.) Plaintiff does not do any cleaning or yard work and does not participate
24 with taking care of his son's dog. (AR 71-72.)

25 Dr. Hayes reviewed Plaintiff's medical records and testified as an impartial medical
26 expert at the hearing. (AR 58-.) Dr. Hayes testified that Plaintiff has strange spells that are not
27 likely to be epileptic, but are likely pseudo-seizure or non-epileptic spells. (AR 61.) Dr. Hayes
28 saw a reference to a motor vehicle accident and various pains throughout the body. (AR 61.)

Plaintiff has an overwhelming medication list, and there are references that question Plaintiff's credibility. (AR 61-62.) Dr. Hayes testified that there is not much objective back up for Plaintiff's various pains, complaints, spinal condition, and seizures. (AR 62.) Plaintiff is currently taking 12 to 13 different medications that have a potential effect on the brain. (AR 62.)

Dr. Hayes was unable to identify any impairment. (AR 52.) Dr. Hayes opined that Plaintiff had degenerative changes in his spine that were age appropriate. (AR 62.) Plaintiff had no evidence of nerve root compression, neuro-anatomic distribution or spinal arachnoiditis or lumbar spinal stenosis. (AR 62.) Dr. Hayes found that Plaintiff may have some arthritis in his knees that would make prolonged walking all day difficult. (AR 63.) Dr. Hayes found no objective medical back up for the limitation that Plaintiff can only stand for fifteen to twenty minutes at a time. (AR 64.) Dr. Hayes opined that Plaintiff's seizures were a psychiatric condition. (AR 64.) Dr. Hayes did not find the Plaintiff required any other limitations. (AR 64.)

Dr. Hayes reviewed the results of the medical examination in which the examining physician noted "Diffuse weakness, give way type of weakness" which means that the effort may not be maximal. (AR 66.) Dr. Hayes did not think that the test results showed that the ulnar nerve would be weak or there was sensory loss in a way that you would expect given Plaintiff's complaints. (AR 66.) Plaintiff's MRI of the cervical spine shows age appropriate changes, and does not support nerve specific route compression. (AR 66-67.) Comparing the MRIs done over time reveals that there has been no change and that Plaintiff's condition is stable. (AR 67.) There was a change indicating that there may be some encroachment on the left S1 nerve root, but there are no strength findings, sensory findings, or reflex findings that would be appropriate to a malfunction of the SI nerve root. (AR 68.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014.
- Plaintiff has not engaged in substantial gainful activity since November 20, 2009.
- Plaintiff has the following severe impairments: cervical degenerative disc disease,

5

      lumbar degenerative disc disease, seizure disorder, and somatoform disorder.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours and sit for six hours in an eight-hour workday with normal breaks; can frequently balance, kneel, crawl, and climb ramps and stairs; can occasionally stoop, crouch, and climb ladders, ropes, or scaffolds. Plaintiff is capable of performing simple, routine tasks with occasional contact with others in a non-public setting. Plaintiff must avoid hazards.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on October 2, 1972 and is a younger individual age 18-49 on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of jobs skills is not material to the disability determination because Plaintiff is not disabled whether or not he has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.
- Plaintiff has not been under a disability as defined by the Social Security Act from November 20, 2009 through the date of decision.

(AR 13-25.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

The sole issue that Plaintiff raises in this appeal is the ALJ's finding regarding Plaintiff's credibility. Plaintiff argues that the ALJ failed to articulate specific and legitimate, much less clear and convincing, reasons to reject Plaintiff's testimony. Defendant responds that the ALJ pointed out specific testimony that was not credible and reasons to support the finding.

### A.     Legal Standard

Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

**B.      The ALJ Provided Clear and Convincing Reasons for the Credibility Finding**

The ALJ cited evidence that Plaintiff might be exaggerating his degree of impairment. In the opinion, the ALJ noted that Dr. Platt reported on October 1, 2010 that Plaintiff displayed give-away weakness in his right arm which is a common pattern of feigned weakness. (AR 17, 745.) Dr. Hayes testified that this indicates that the effort given may not be maximal. (AR 17, 66.) On August 18, 2010, Dr. Portnoff found that Plaintiff's subjective complaints were not congruent with the objective medical findings. (AR 18, 731.) On December 27, 2010, Dr. Portnoff diagnosed, among other things, evidence of nonorganic disease, of symptom magnification, and malingering. (AR 18, 812.)

The ALJ noted that "[a]t times when the claimant noted he was having a 'seizure,' the EEG showed that there was no substantiation of any such activity. The claimant said he was having a seizure in the presence of licensed physician's assistant David Baker. . . . He was oriented and alert, with intact memory, attention span and concentration at the time he presented with a claimed seizure." (AR 19.)

Plaintiff informed Mr. Baker that he was having a seizure when he presented for an

appointment on February 14, 2011. (AR 940.) Plaintiff was found to have a normal gait; muscle strength in his left and right extremities was normal; and muscle strength and tone was normal. (AR 940.) Plaintiff was oriented to person, place and time with a normal mood and affect. (AR 940.) Plaintiff's immediate, recent, and remote memory were intact. (AR 940.) Plaintiff had normal recall and was able to do serial 7s, spell world backwards, and was able to repeat and name three objects. (AR 940.) Plaintiff's speech was normal with no aphasia. (AR 940.) Plaintiff had normal quality, quantity and rate of speech and his reading and writing quality was unimpaired. (AR 940.) Plaintiff was aware of current events, past history and had normal vocabulary.[2] (AR 940.)

The opinion also points to Dr. Hayes testimony as an impartial medical expert at the hearing. (AR 22.) Dr. Hayes testified that Plaintiff had strange spells that are not likely to be epileptic and are likely pseudo-seizures, and there are references that question credibility. (AR 22, 61-62.) Dr. Hayes also testified that Plaintiff's complaints of pain were not consistent with the objective medical evidence. (AR 66.)

Dr. Mehdi also found that based on the medical record Plaintiff did not have a neurological issue. (AR 981.) Dr. Mehdi diagnosed Plaintiff with pseudo seizures and recommended that he be referred to a psychiatrist and taken off all seizure medication. (AR 981.) There are also several indications in the record that Plaintiff exhibited drug seeking behavior. (AR 396, 479, 667.) On January 4, 2012, the record notes "concerned about many illnesses - ?hypochondria?" (AR 1019.)

Although the ALJ's opinion suggests malingering, the ALJ did not make a finding that Plaintiff was malingering and, therefore, was required to provide specific, clear and convincing reasons to reject Plaintiff's testimony about the severity of his symptoms. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir.). This requires the ALJ to identify the testimony that is not credible and the evidence that undermines the testimony. Brown-Hunter, 798 F.3d at 755

---

[2] Similarly, the record shows other visits at which Plaintiff presented alleging he was having tremors or shakes and the record notes generally normal examination. (AR 433, 550, 666, 671, 680.) On June 19, 2011, Plaintiff stated he was having a seizure during his medical appointment, but the record shows only some mild convulsion of his right hand. (AR 964.) Plaintiff did not lose consciousness and his reflexes were intact. (AR 964.) The record notes that he was alert and oriented with no distress. (AR 964.)

(quoting <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

The Court disagrees with Plaintiff that the ALJ simply set forth boilerplate language that courts have rejected as insufficient to allow for meaningful review of the credibility finding. While the ALJ did include some boilerplate language, the opinion went into detail about the specific testimony that the ALJ found to be not credible and stated the evidence that undermined the testimony.

1. <u>Use of Cane</u>

Specifically, the ALJ noted that Plaintiff claimed to need a cane when he walks any distance, but does not use one in his home and his doctors have often recorded a normal gate. (AR 23.) While there are times where the record notes an antalgic gait, there is no mention of an assistive device. (AR 23.) Even Dr. Arain did not opine that Plaintiff needed an assistive device for ambulation. (AR 23.)

On July 21, 2011, the record notes that Plaintiff ambulates well and has a stable gait despite presenting at the visit complaining of dizziness. (AR 963.) Review of the medical record shows that there are some references to Plaintiff presenting with a cane, but the Court finds no doctor who found that Plaintiff was required to use an assistive device and other than a few references to an antalgic gait, the record generally notes that Plaintiff's gait is normal.

2. <u>Dizzy Spells</u>

The ALJ found that Plaintiff claims dizzy spells or seizures, but continues to maintain a driver's license and drives despite claiming to have disabling dizzy spells. (AR 23.) Plaintiff testified at the hearing that he drives once a week. (AR 39.) On June 12, 2012, Plaintiff's doctor signed off on an application for a disabled person's placard. (AR 1059.) There is substantial evidence in the record that Plaintiff maintains a driver's license and continues to drive which is inconsistent with his claims that he has at four to six disabling seizures during the day each week.

3. <u>Crowds</u>

The ALJ noted that Plaintiff states that he cannot be in crowds or go where there are any number of people, but he planned a trip to Disneyland. (AR 23.) At his June 22, 2011 medical

visit, Plaintiff requested a note so that he could get a pass at Disneyland to allow him to not have to stand in line for long periods of time. (AR 962.) This is substantial evidence to discredit Plaintiff's claim that he is not able to tolerate being in crowds.

### 4. Seizures

The ALJ also relied on objective electro physical tests which do not confirm Plaintiff's claims of seizures. (AR 23.) The ALJ noted that Plaintiff has claimed to have seizure while in the presence of medical personnel that did not affect his consciousness, alertness, attention span, or physical examinations, and the objective findings are not congruent with Plaintiff's subjective complaints. (AR 23.) Plaintiff argues that the lack of objective evidence is always legally insufficient to request a claimant's testimony.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Review of the medical record shows that Plaintiff had a digital ambulatory EEC recording from the period of August 13, 2008 through August 18, 2008. The test showed normal readings throughout the time period despite Plaintiff's log which recorded multiple "spells" which included an inability to move or speak, foggy mind, tingling in the body, jerking to both sides, dropping things, and drooling. (AR 280-81.)

Plaintiff was also referred to a neurologist, Dr. Mehdi, who found that this is not a neurological issue. (AR 981.) On April 18, 2012, Dr. Mehdi recommended that Plaintiff be referred for "robust" psychological input plus medication and therapy. (AR 981.) Dr. Mehdi also recommended that Plaintiff be taken off all seizure medications under psychiatric supervision. (AR 981.)

At the July 19, 2012 hearing, Dr. Hayes testified that there is not much objective support for Plaintiff's complaints of pain, spinal condition, and seizures. (AR 62.) Dr. Hayes opined that Plaintiff's seizures are a psychiatric condition. (AR 64.)

The ALJ also found that Plaintiff's medical records do not support the claimed frequency of seizures. (AR 23.) While Plaintiff was claiming to have several seizures a day, his medical records for the same time period show two to three seizures in a several week period. (AR 23.)

During a June 30, 2009 visit Plaintiff stated that he had a seizure on that day, but his last seizure was two to three weeks prior to the visit. (AR 550.) On May 16, 2011, Plaintiff told Dr. Baker that he had two breakthrough seizures since his February 14, 2011 visit. (AR 938.) On June 11, 2011 Plaintiff reported that his last seizure was May 30, 2011. (AR 965.) On December 21, 2011, Plaintiff reported that his last seizure was more than two weeks ago. (AR 1020.)

At the July 19, 2012 hearing, Plaintiff testified that he was having four to six seizures a week during the day and more at night. (AR 53, 75.) He also testified that on a bad week he will have ten to twelve seizures. (AR 54.) In this instance, Plaintiff goes to the doctor four or more times per month so there is significant evidence of his medical condition. Plaintiff complained of having a seizure on December 21, 2011 with another mild seizure two weeks prior. (AR 1020.) However, from December 21, 2011 to July 26, 2012, Plaintiff saw his physicians twenty times and there is no mention in the medical record of his having another seizure other than Plaintiff's statement to Dr. Mehdi that he continues to have episodes. (AR 981.)

There is substantial evidence in the record to support the ALJ's finding that Plaintiff's testimony regarding his seizure activity is not credible.

5. Manipulation of Testing

The ALJ also considered that Dr. Platt found that Plaintiff displayed give-away weakness and Dr. Portnoff noted there were non-physiologic findings indicating that Plaintiff has not given his best efforts during medical examinations. (AR 23; 745, 812; 731.) The ALJ properly considered the physicians findings that Plaintiff did not give his best efforts during medical testing in making the credibility determination. Thomas, 278 F.3d at 959.

6.  Daily Activities

Plaintiff argues that the ALJ stated that his activities can somehow be construed as comparable to a forty hour work week. However, the ALJ found that Plaintiff participates in a wide range of daily activities indicating that he has greater abilities than he admits. (AR 23.) There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).

Plaintiff reported that he feeds, water and cleans his dog with the help of his mother. (AR 230.) He prepares simple meals. (AR 231.) He does some household chores that he did not specify. (AR 231.) Plaintiff testified at the hearing that he gets his son off to school each day. (AR 69.) He goes grocery shopping with his son. (AR 70.) Here, the ALJ considered that Plaintiff's reported activities contradicted his testimony regarding his limitations. Even if the ALJ's conclusion in this area was erroneous, that would not negate the validity of the ultimate credibility determination which is supported by other substantial evidence in the record. Carmickle, 533 F.3d at 1162.

**C.  Conclusion**

The Court finds that the ALJ provided clear and convincing reasons to find that Plaintiff's testimony is not credible which are supported by substantial evidence in the record. For that reason, Plaintiff's appeal shall be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff's testimony was not credible.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Harland Thomas Walters. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **November 3, 2015**

UNITED STATES MAGISTRATE JUDGE